# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **HELEN C. GIGGER,** | ) |
| **Plaintiff,** | ) ) ) |
| vs. | ) Case No.   CIV-17-23-C ) |
| **THE CITY OF OKLAHOMA CITY,** a municipal corporation, | ) ) ) |
| **Defendant.** | ) ) |

## COMPLAINT
## (JURY TRIAL DEMANDED)

Plaintiff, Helen C. Gigger, by and through her attorney of record, Melvin C. Hall of Riggs, Abney, Neal, Turpen, Orbison & Lewis and herein files this Complaint against Defendant, the City of Oklahoma City. In support of her Complaint, Plaintiff states as follows:

### PRELIMINARY STATEMENT

1. This action arises under the provisions of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 (ADEA); the American with Disabilities Act, 42 U.S.C. §§ 12101 et seq. (ADA); and retaliation which is proscribed under both the ADEA and the ADA to address the deprivation of her rights from discriminatory employment practices by the City of Oklahoma City.

### JURISDICTION AND VENUE

2. The court has jurisdiction over this Complaint in that the matters in controversy arise under the laws of the United States, 28 U.S.C. § 1331 and 1343(a).

1

3. Venue is proper in this court pursuant to 28 U.S.C. § 1391.

**PARTIES**

4. Plaintiff, Helen C. Gigger (Ms. Gigger) is 72 years old and disabled. She is an American citizen of the United States, a resident of Oklahoma City, Oklahoma, and this judicial district. Plaintiff had been employed with the City of Oklahoma City for 37 years, from May 7, 1979 until her termination on June 30, 2016.

5. Defendant, the City of Oklahoma City (OKC) is a municipal corporation doing business in Oklahoma City, Oklahoma County, and this judicial district. Defendant is an employer under the Age Discrimination Employment Act and the Americans with Disabilities Act.

**INTRODUCTION**

6. This action arises under the provisions of the Age Discrimination Employment Act, 29 U.S.C. §§ 621-634; the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq.; and retaliation which is prescribed under both provisions, specifically 29 U.S.C. § 623(d) and 42 U.S.C. § 12203, respectively. Ms. Gigger is seeking declaratory relief, injunctive relief, and damages including actual damages and compensatory damages to address the deprivation of her rights from discriminatory employment practices on the basis of her age, disability, and protected activity by OKC.

**PRELIMINARY STATEMENT**

7. Ms. Gigger began her employment with OKC on May 7, 1979, as an Assistant Municipal Counselor I in the Litigation Division for claims.

8. After approximately two years of successfully performing her duties in the Litigation Division, Ms. Gigger, in 1981, was promoted to the position of Municipal Counselor II and was moved to the Contracts Division under the supervision of Giles Radchiff, Division Head of the Contracts Division.

9. In 1991, Ms. Gigger was promoted to the position of Assistant Municipal Counselor III and was made Head of the Contracts and Operations Division. As head of the division, Ms. Gigger supervised approximately seven attorneys and eight support staff.

10. Also in 1991, Ms. Gigger was diagnosed with diabetes. However, at that time the diagnosis did not impact her work, job performance, or work schedule.

11. In 2012, Ms. Gigger's was assigned to work in the Land Use Division under the supervision of Dan Brummett, Division Head.

12. In 2013, Ms. Gigger's diabetes had damaged her kidneys so severely that she suffered renal failure, and she was placed on kidney dialysis treatments[1] three times a week: Monday, Wednesday, and Friday for three to four hours per treatment.

13. Ms. Gigger's diabetes, renal failure, and kidney dialysis treatments all constitute a disability because they substantially impair the major life function of the endocrine system, 29 C.F.R. § 1630.2(j)(3)(iii). Consequently, these disabilities substantially impair the major life activity of working, 29 C.F.R. § 1630.2(h)(1)(i).

---

[1] Kidney dialysis treatments are a process by which toxins are cleansed from the patient's blood.

14. At the time of her diagnosis, Ms. Gigger made Municipal Counselor Kenneth Jordan (Mr. Jordan) aware that her diabetes had made it necessary for her to receive kidney dialysis treatments three times a week for three to four hours per treatment.

15. During her meeting with Mr. Jordan, which was attended by Dan Brummett, Mr. Jordan advised Ms. Gigger that each time she received her kidney dialysis treatments, the three to four hours it took to receive them would be considered work time. Ms. Gigger viewed this as OKC affording her a reasonable accommodation to receive her kidney dialysis treatments.

16. In January 2016, OKC Personnel Department issued a Revised Reduction in Force Frequently Asked Questions.

17. On February 3, 2016, Municipal Counselor, Kenneth Jordan issued a memo entitled: Reduction in Force Plan for the Municipal Counselor's Office for City Fiscal Year 2016-2017 (RIF Plan for FY 2017). The memo outlined the layoff procedures and criteria to determine full-time employment positions for layoff.

18. On February 24, 2016, Ms. Gigger had a meeting with Mr. Jordan wherein she asked him, "Am I being riffed?" Mr. Jordan replied, "Yes, but nothing is final because this office has not met with the City Manager to go over the budget and then after that, the City Council has to act." Mr. Jordan then told Ms. Gigger, "This has happened before and they could consider furloughs or cuts in pay, but all this has happened before and nothing is concrete." Mr. Jordan then inappropriately and unlawfully asked Ms. Gigger about her age, Social Security status, and retirement. Mr. Jordan's questions and comments regarding Ms. Gigger's age, Social Security status, and retirement constitutes direct evidence of age

4

and disability discrimination because such comments establish, without inference or presumption, Mr. Jordan's discriminatory motive given that the comments were contemporaneously made, and directly linked to the RIF and Ms. Gigger's termination.

19.     Mr. Jordan's questions and comments to Ms. Gigger also clearly reveal that he had already made the determination the she would be riffed if she did not retire, as Mr. Jordan unlawfully and inappropriately encouraged her to do.

20.     On February 25, 2016, Mr. Jordan sent Ms. Gigger an email with the subject: ISSUES RELATED TO CITY INSURANCE SOCIAL SECURITY ETC., AS WE DISCUSSED YESTERDAY. The email made several direct and discriminatory references to Ms. Gigger's age, retirement, Social Security, and Medicare. The email specifically stated:

> Wiley and Cindy are going to develop the information for you regarding City insurance for retirees and also social security and Medicare. Since you are over 70, you could (and should) be receiving your full SS benefits (even now as a full-time employee). You are letting the Federal government keep your SS benefits by not signing up for and receiving them!
>
> Further, you need to sign up for Medicare (and Nathan, if he's 65 or older)! Wiley advises that anyone who is 65 should have signed up for Medicare then, and there may be a (Federal law) penalty for no doing so. You need to get informed on SS and Medicare issues, and Wiley is going to get with Personnel and get you the information.
>
> The City's retirement insurance plan is a Medicare Supplement. Wiley is going to find out the information on what that costs.

21.     Mr. Jordan's email to Ms. Gigger referring to her age, her husband's age, retirement, Social Security, and Medicare constitutes direct evidence of discriminatory motive because the email leaves no doubt that Mr. Jordan wanted Ms. Gigger to retire or

5

she would be terminated. Significantly, the email does <u>not</u> mention that Mr. Jordan had informed Ms. Gigger that she had been selected for termination via reduction in force.

22. Ms. Gigger replied to Mr. Jordan's email with an email dated February 26, 2016, where she stated again that her "intent is not to retire at this time, and I was under the impression from you that the budget cuts may or may not happen. I still hope for the best."

23. On March 1, 2016, Mr. Jordan sent an email to the entire Municipal Counselors Office advising that a 5.50% general fund reduction of the office or slightly more than $296,000 will be required for the Municipal Counselors Office.

24. On March 17, 2016, Ms. Gigger attended a meeting with Deputy Municipal Counselor, Cindy Richard (Ms. Richard), who gave Ms. Gigger some paperwork indicating that Ms. Gigger was cut from the budget. During this meeting Ms. Gigger told Ms. Richard that this has nothing to do with the budget, but is disparate treatment against her. Ms. Richard told Ms. Gigger that it only has to do with the budget. Ms. Gigger told Ms. Richard that Mr. Jordan told her the reduction was not set and it may not go through.

25. Later that same day, Ms. Gigger sent Ms. Richard an email complaining that she viewed being riffed as disparate treatment.

26. On March 18, 2016, Ms. Gigger sent Ms. Richard another email regarding the March 17, 2016, meeting in which Ms. Gigger reminded Ms. Richard that she was advised by Mr. Jordan that the reduction may or may not occur, as to Ms. Gigger. Ms. Gigger then requested that Ms. Richard check with Mr. Jordan to verify the accuracy of the statement he had made to her.

27. On April 11, 2016, Mr. Jordan sent Ms. Gigger an email memo regarding: Notice of Position Elimination Pursuant to FY 2016-2017 RIF Plan. In the email memo Mr. Jordan stated, "on March 17, 2016, Cindy Richard, Deputy Municipal Counselor, informed you that your position would likely be impacted by this budget reduction… I regret to inform you that your position is one that has been identified for elimination… your employment with the City will terminate as of 12:00 a.m. on July 1, 2016."

28. Mr. Jordan's Notice of Position Elimination pursuant to the FY 2016-2017 RIF Plan, in fact violated the RIF Plan because Ms. Gigger's position of Municipal Counselor III was <u>not</u> eliminated, but retained by numerous Municipal Counselor IIIs, who unlike Ms. Gigger, were younger, not disabled, and had not previously complained about discriminatory animus and disparate treatment. In addition, the services performed by Ms. Gigger were <u>not</u> eliminated. Those exact duties are being performed by the other attorneys in the office, who unlike Ms. Gigger, were younger, not disabled, and had not previously complained about discriminatory animus and disparate treatment.

29. On May 3, 2016, Plaintiff gave a memo to Wiley Williams stating her oppositions to being selected for a reduction in force, and she complained that she was the victim of age and disability discrimination.

30. On June 7, 2016, Cindy Richard sent Ms. Gigger an email advising that due to a retirement, a vacancy for Legal Secretary I, Step I in the Criminal Justice Division had become available. The memo advised that Ms. Gigger was eligible for reassignment if she could pass a typing test of 45 words per minute. Ms. Gigger was given until Monday, June 13, 2016, to advise whether she was interested.

7

31.     On June 10, 2016, Ms. Gigger sent Ms. Richard a memo advising that the suggestion of an Assistant Municipal Attorney with 37 years of experience being asked to apply for the position of Secretary I, Step I was humiliating, disrespectful, and yet another display of animus. Ms. Gigger's memo also advised that the re-assignment violated the February 3, 2016, RIF Plan, which expressly defined re-assignment in lieu of lay-off as "a position of a similar level of difficulty and responsibility." Clearly, reassigning Ms. Gigger to a Secretary I, Step I only if she passed a typing test of 45 words per minute, would not constitute a position of a similar level of difficulty and responsibility to that of an Assistant Municipal Attorney.

32.     On June 24, 2016, Ms. Gigger sent a memo to Kenneth Jordan declining to test for the position of Legal Secretary. Ms. Gigger stated that the job qualifications for the position required "5 years of legal secretary experience preferred and 3 years required," and therefore, the requirement was beyond the scope of Plaintiff's qualifications.

33.     Mr. Jordan was well aware that Ms. Gigger had never worked as a Legal Secretary, and that it was humiliating to Ms. Gigger for him to even offer her such a position after she had worked as an Assistant Municipal Attorney for 37 years.

34.     On June 29, 2016, Ms. Gigger received a memo: Final Notice of Reduction in Force from Mr. Jordan advising her of her termination effective June 30, 2016. The memo stated that on June 14, 2016, the City Council implemented a 5.5% general fund reduction to the Municipal Counselor's Office that did not include funding for Ms. Gigger's position.

35. Mr. Jordan's June 29, 2016, Final Notice of Reduction in Force violates the RIF Plan, it violates the criteria to determine full-time employment positions for layoff, and it violates the order of layoff. Instead of complying with his own reduction in force plan, criteria, and order of layoff, Mr. Jordan's Final Notice of Reduction in Force merely stated that Ms. Gigger was terminated only because of a lack of funding for her position. The Final Notice is totally devoid of any of the analysis required by Mr. Jordan's February 3, 2016, RIF Plan's criteria and order of layoff

36. Ms. Gigger's date of birth is December 24, 1944, making her age 72. Based on information and belief, Ms. Gigger was the oldest fulltime Assistant Municipal Counselor working in the Municipal Counselor's Office for OKC. She also had the most seniority, longevity, and experience of any other lawyer in the Municipal Counselor's Office. In addition, Ms. Gigger was the only lawyer with a disability whose position was eliminated as a result of the reduction in force. There were no other lawyers in the Municipal Counselor's Office that were terminated as a result of the reduction in force.

37. On September 20, 2016, Ms. Gigger filed a Charge of Discrimination with the EEOC asserting that she was the victim of discrimination based on age, disability, and retaliation. None of the duties performed by Ms. Gigger were eliminated, but are now performed by lawyers who are younger, not disabled, and who have not complained about discriminatory animus and disparate treatment.

38. On or about November 1, 2016, Ms. Gigger received her Notice of Right to Sue letter from the EEOC, which authorized her to file suit within 90 days of receipt of the Notice.

## COUNT I
## Discrimination Based on Age

39. Ms. Gigger incorporates by reference all previous allegations.

40. OKC engaged in intentional and unlawful employment practices in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. The discriminatory practices include, but are not limited to, Ms. Gigger's termination on June 30, 2016, due to her age, 72, in violation of the ADEA.

## COUNT II
## Discrimination Based on Disability

41. Ms. Gigger incorporates by reference all previous allegations.

42. OKC engaged in intentional and unlawful employment practices in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12102 et seq. The discriminatory practices include but are not limited to terminating Ms. Gigger on June 30, 2016, due to her disability in violation of the ADA.

## COUNT III
## Retaliation

43. Ms. Gigger incorporates by reference all previous allegations.

44. OKC engaged in intentional, unlawful, and retaliatory employment practices in violation of the ADEA and the ADA, specifically 29 U.S.C. § 623(d) and 42 U.S.C. § 12203, respectively. The retaliatory practices include, but are not limited to, terminating Ms. Gigger on June 30 2016, due to her protected opposition to the intentional and unlawful employment practices of OKC.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Helen C. Gigger, seeks to recover against Defendant, the City of Oklahoma City:

1. Actual damages in the form of lost back pay and benefits.

2. Reinstatement, however, in lieu of reinstatement, Ms. Gigger seeks front pay and all lost future earnings projected to her retirement.

4. Compensatory Damages for future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

5. Reasonable attorney fees and court costs, as well as other relief as the court deems appropriated

        Respectfully submitted,

        RIGGS, ABNEY, NEAL, TURPEN,
          ORBISON & LEWIS

        s/ Melvin C. Hall
        Melvin C. Hall, OBA No. 3728
        528 NW 12th Street
        Oklahoma City, OK 73103\
        Telephone: (405) 843-9909
        Facsimile: (405) 842-2913
        Email: mhall@riggsabney.com

**ATTORNEY'S LIEN CLAIMED**
**JURY TRIAL DEMANDED**